## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**VIRGINIA E. HARRELL,**

      **Plaintiff,**

**v.**                             **CASE No. 4:20-cv-30-AW-CAS**

**MHM HEALTH PROFESSIONALS, LLC,**
**f/k/a MHM HEALTH PROFESSIONALS, INC.,**
**and CENTURION OF FLORIDA, LLC,**

      **Defendants.**
_____/

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff, VIRGINIA E. HARRELL (hereinafter "Plaintiff"), by and through undersigned counsel, and files this Amended Complaint and hereby sues Defendants, MHM HEALTH PROFESSIONALS, LLC, f/k/a MHM HEALTH PROFESSIONALS, INC. (hereinafter "MHM") and CENTURION OF FLORIDA, LLC (hereinafter "Centurion") for violations of Florida's Public Whistle-blowers' Act (Fla. Stat. §§ 112.3187 – 112.31895), Florida's Private Whistle-blowers' Act (Fla. Stat. §§ 448.101 – 448.105) and for violations of Chapter 760 of the Florida Civil Rights Act, and alleges as follows:

### Nature of the Action

1.    This is an action for damages in excess of $75,000 and for all applicable relief required pursuant to Sections 112.3187(9) and 448.103(2), Florida

Statutes, stemming from the unlawful actions of MHM and Centurion (MHM and Centurion shall hereinafter be referred to collectively as "Defendants") in violation of Florida's Public Whistle-blowers' Act (hereinafter the "Public WBA") and Florida's Private Whistle-blowers' Act (hereinafter the "Private WBA"). This is also an action for damages and all available relief required as a result of Defendants' unlawful acts of retaliation in violation of Chapter 760 of the Florida Civil Rights Act (hereinafter the "FCRA").

### The Parties and Their Relationships

2.     At all times pertinent hereto, Plaintiff has been a resident of the State of Florida and was Defendants' "employee," as such term is defined under the Public and Private WBA and the FCRA.

3.     At all times material hereto, MHM has been a corporation licensed and authorized to conduct business in the State of Florida and is an employer as defined under the Public and Private WBA and the FCRA.

4.     At all times material hereto, Centurion has been a corporation licensed and authorized to conduct business in the State of Florida with its principal place of business in Leon County, Florida, and is an employer as defined under the Public and Private WBA and the FCRA.

5.     At all times pertinent to this action, MHM has been a part owner of a joint venture, Centurion of Florida, LLC ("Centurion").

2

6.     Centurion is a health care provider contracted to provide inmate health care services for the Florida Department of Corrections ("FDOC"), which is an "Agency" of the State of Florida as defined under the Public and Private WBA and the FCRA.

7.     Centurion's contract with FDOC began in April 2016.  According to Centurion's website, MHM serves in a partnership with Centene Corporation which together make up Centurion.  Further, job advertisements indicate that Centurion positions are a "partnership with MHM Services" with Centurion employment benefits included.  Additionally, MHM's website lists Centurion as an affiliated company, and according to the State of Florida, Department of State website, Centurion and MHM share common management and ownership.

8.     MHM is a subcontractor for Centurion which provides personnel and staff under a contract between FDOC and Centurion.  As such, at all times pertinent to this action, Defendants have been "independent contractors" of FDOC, as defined under the Public WBA and the FCRA.  Further, at all times material hereto, Defendants were Plaintiff's "employer," as such term is defined under the Public and Private WBA and the FCRA.

9.     This action involves claims which are in excess of $75,000, exclusive of costs and interest.  This Court has jurisdiction pursuant to Sections 112.3187(8),

448.103(1)(a), and 760.11(4), Florida Statutes, as well as pursuant to 28 U.S.C. § 1332.

10.     Venue lies within the Northern District of Florida because Centurion's principle place of business is in this county and MHM maintains a regional office and agents in Leon County, Florida.  Further, venue is proper in this Court because this action was removed from Leon County Circuit Court which lies within the Northern District of Florida, Tallahassee Division.

**Conditions Precedent and Exhaustion of Administrative Remedies**

11.     On April 26, 2018, Plaintiff was discharged (*i.e.* terminated) by Defendants in direct retaliation for having made multiple protected disclosures under the Public and Private WBA and the FCRA.

12.     On May 8, 2018, prior to the filing of this Complaint and within sixty (60) days of her actual discharge, Plaintiff filed a Public Whistle-Blowers' Charges of Discrimination and FCRA complaints against Defendants with the Florida Commission on Human Relations ("FCHR") and the Equal Employment Opportunity Commission ("EEOC").

13.     On December 31, 2018, Plaintiff received a Notice of Termination of Investigation of her Public Whistle-blowers' charge of discrimination against Defendants from the FCHR.

14.     As it relates to Plaintiff's FCRA claims against Defendants, the FCHR/EEOC failed to make a cause determination within 180 days of the filing of Plaintiff's FCRA compliant.   Therefore, pursuant to Section 760.11(8), Florida Statutes, Plaintiff is entitled to proceed with the filing of this FCRA retaliation complaint against Defendants in this Court under Section 760.11(4), Florida Statutes, as if the FCHR/EEOC had determined that there is reasonable cause to believe that Defendants engaged in discriminatory practices in violation of the FCRA.

15.     As set forth *supra*, Plaintiff has satisfied all conditions precedent and has exhausted all required administrative remedies prior to the filing this action against Defendants for violations of the Public and Private WBA and the FCRA.

## ALLEGATIONS OF FACT

16.     At all times pertinent to this action, Plaintiff was employed by Defendants as an impaired inmate and infection control nurse at Northwest Florida Reception Center ("NWFRC"), an FDOC corrections facility.

17.     On April 26, 2018, Plaintiff was actually discharged (*i.e.* terminated) by Defendants in retaliation, at least in part, for having made protected disclosures under the Public and Private WBA and the FCRA, and for objecting to and/or refusing to participate in activities, policies or practices of Defendants which were in violation of laws, rules and/or regulations.

18.    Prior to her unlawful discharge, Plaintiff refused to participate in adverse action prohibited by the Public WBA and made written disclosures protected under the Public WBA alleging violations or suspected violations of laws, rules and/or regulations and acts or suspected acts of malfeasance and misfeasance being committed by employees and/or agents of Defendants.

19.    Prior to her unlawful discharge, Plaintiff also engaged in protected activity under the Private WBA by making written protected disclosures to her supervisors and the FDOC, which is an "appropriate governmental agency" as defined by Fla. Stat. § 448.101(1), and by objecting to and/or refusing to participate in activities, policies or practices of Defendants which were in violation of laws, rules or regulations.

20.    Additionally, prior to her unlawful discharge, Plaintiff also made written disclosures protected under the FCRA opposing unlawful employment practices under the FCRA which were being committed by employees and/or agents of Defendants.

21.    All of Plaintiff's written protected disclosures under the Public and Private WBA and the FCRA were submitted to her immediate supervisor, her manager, the FDOC and/or other appropriate persons having the authority to investigate, police, manage, or otherwise remedy the violations or acts of which Plaintiff complained.

22.   Most if not all of Plaintiff's protected disclosures have been substantiated by Defendants as true and actual violations of applicable laws, rules, and/or regulations, and as such, Plaintiff's written protected disclosures under the Public and Private WBA and the FCRA clearly were not made in bad faith or for a wrongful purpose.

23.   Further, prior to her unlawful retaliatory discharge on April 26, 2018, Defendants had never engaged in "adverse personnel action" or "retaliatory personnel action" as defined under the Public and Private WBA, against Plaintiff. Thus, Plaintiff's written protected disclosures under the Public and Private WBA and the FCRA clearly did not occur after Defendants' initiation of adverse or retaliatory personnel action against Plaintiff.

24.   Finally, after Plaintiff engaged in protected activities and submitted written protected disclosures to Defendants under the Public and Private WBA and the FCRA, she was subsequently terminated by Defendants. Thus, there is a clear causal connection between Plaintiff's protected disclosures under the Public and Private WBA and the FCRA and Defendants' decision to engage in adverse personnel action against Plaintiff and to actually discharge her on April 26, 2018.

## Plaintiff's Protected Disclosures Under
## the Public and Private WBA and the FCRA

25.     On or about December 15, 2017[1], Plaintiff submitted her first written

protected disclosure, via email, to Tara Johnson (Plaintiff's "supervisor" as defined

under the Private WBA) and to Sarah Brus who is Defendants' Director of Human

Relations ("H.R.") at NWFRC.  Pursuant to Defendants' own internal policies and

procedures, Ms. Brus was charged with the responsibility and authority to

investigate, police, manage, or otherwise remedy the violations or suspected

violations of laws, rules, and/or regulations which Plaintiff repeatedly alleged were

occurring.

26.     In her first written protected disclosure under the Public and Private

WBA as well as the FCRA, Plaintiff complained that her immediate supervisor,

Director of Nursing, Brandi Blocker, R.N., had subjected her to a hostile working

environment and sexual harassment in violation of the FCRA and had engaged in

the following acts of malfeasance, misfeasance, and violations of laws, rules,

and/or regulations being committed by her immediate supervisor, Director of

Nursing, Brandi Blocker, R.N.:

> a.     Ms. Blocker was engaging in a pattern of favoritism and
> discriminatory employment practices as it relates to the

---

[1] On December 11 and December 12, 2017, Plaintiff attempted to contact Ms. Brus to submit a complaint concerning Ms. Blocker; however, Ms. Brus was unavailable until December 15, 2017.

assignment of overtime, hiring for vacant positions, and filling staff shortages;

b.    Ms. Blocker was engaging in acts of sexual harassment by inappropriately touching and flirting with other female staff members; and

c.    Ms. Blocker had created a hostile working environment by intentionally intimidating Plaintiff and other staff members which caused Plaintiff to become fearful of subsequent retaliation.

27.    Also on or about December 15, 2017, Plaintiff submitted her second written protected disclosure, via email, to Sarah Brus.  In her second written protected disclosure under the Public and Private WBA as well as the FCRA, Plaintiff complained that Director of Nursing, Lori Cook, R.N., had committed acts or suspected acts of malfeasance and misfeasance, and had engaged in sexual harassment, discriminatory employment practices, and had created an uncomfortable and hostile working environment in violation of the Public and Private WBA, the FCRA, and applicable laws, rules, and/or regulations. Specifically, Plaintiff complained that Ms. Cook stated to Plaintiff and other staff members that she planned to go to a sex toy store in Panama City, Florida, to purchase "dildos for her sisters for Christmas so they could go fuck themselves."

Additionally, Plaintiff included in this written protected disclosure that Ms. Cook proceeded to state that when her mother told her that her father would find out that she planned to purchase dildos for her sisters for Christmas, Ms. Cook responded to her mother that "it's okay, he wants them to go fuck themselves too."

28.    On or about January 9, 2018, Plaintiff submitted her third written protected disclosure when she submitted an FDOC Incident Report.  In her third written protected disclosure under the Public and Private WBA, Plaintiff complained that Maria Del Carlo, who at the time was a registered mental health counselor intern at NWFRC, had engaged in acts of malfeasance and misfeasance and had violated applicable laws, rules and/or regulations by unilaterally canceling an inmate's declaration of a psychological emergency and by refusing the evaluate the mental health and psychological needs of the inmate, in direct violation of applicable laws, rules and/or regulations.

29.    On or about March 30, 2018, Plaintiff submitted her fourth written protected disclosure, via email, to Plaintiff's supervisor/manager, Health Services Administrator, Tara Johnson[2]   (hereinafter "Johnson").   In her fourth written protected disclosure under the Public and Private WBA, Plaintiff complained that Director of Nursing, Lori Cook, R.N. and Amanda McDaniel, LPN, had engaged

---

[2] On or about March 30, 2018, prior to submitting her fourth written protected disclosure to Johnson, Plaintiff made a verbal complaint to Johnson concerning this incident.  Upon making this verbal complaint, Johnson directed Plaintiff to submit this complaint to her via email as opposed to submitting this compliant via an FDOC Incident Report.

in malfeasance, misfeasance, and had violated applicable laws, rules, and/or regulations by intentionally failing to account for controlled prescription medications, including narcotic pain medications, and had intentionally failed to fill out the required "Narcotic Accounting Log" and/or had knowingly and intentionally created a false and fraudulent "Narcotic Accounting Log" record.

30.    Thereafter, also on or about March 30, 2018, Plaintiff submitted her fifth written protected disclosure under the Public and Private WBA when she submitted a written complaint, via email to Sara Brus, concerning the events set forth above involving Ms. Cook, Ms. McDaniel and the fraudulent "Narcotic Accounting Log" record.

31.    On or about March 30, 2018, Plaintiff submitted her sixth written protected disclosure when she submitted an FDOC Incident Report.  In her sixth written protected disclosure under the Public and Private WBA, Plaintiff complained that Medical Records Clerk, Keidre Long, was engaging in an inappropriate sexual relationship with an FDOC inmate in violation of applicable laws, rules, and/or regulations.

32.    On or about April 2, 2018, Plaintiff submitted her seventh written protected disclosure when she submitted an FDOC Incident Report.  In her seventh written protected disclosure under the Public and Private WBA, Plaintiff complained that Amanda McDaniel, LPN, was engaging in an inappropriate sexual

relationship with an FDOC inmate and was intentionally violating applicable security procedures in violation of applicable laws, rules, and/or regulations. Additionally, in this written protected disclosure, Plaintiff complained that on or about March 28, 2018, Ms. McDaniel had engaged in malfeasance, misfeasance and had violated applicable laws, rules and/or regulations by failing to ensure that the pill room was locked and secure and that the pill room door was not allowed to be left propped open.

33.     Also on or about April 2, 2018, Plaintiff submitted her eighth written protected disclosure when she submitted an FDOC Incident Report.  In her eighth written protected disclosure under the Public and Private WBA, Plaintiff complained that Amanda McDaniel, LPN, had engaged in malfeasance, misfeasance, and had violated applicable laws, rules, and/or regulations by having inappropriate conversations with an FDOC inmate, concerning Plaintiff, and that Ms. McDaniel was disclosing to inmates and others that Plaintiff's prior written complaint concerning Ms. McDaniel's inappropriate relationship with an FDOC inmate was the cause for the "drama within the medical department."

34.     Also on April 2, 2018, Plaintiff submitted her ninth written protected disclosure when she submitted an email to Johnson[3].  In her ninth written protected

---

[3] Again, as was the case with Plaintiff's fourth written protected disclosure, Johnson directed Plaintiff to submit this complaint to her via email as opposed to submitting this compliant via an FDOC Incident Report.

disclosure under the Public and Private WBA, Plaintiff complained that Ms. McDaniel was engaging in malfeasance, misfeasance and was violating applicable laws, rules and/or regulations.  Specifically, in her ninth written protected disclosure, Plaintiff complained that previously that day, upon entering the unattended pill room, she noticed that pills had been left out on the counter, that the stock medication closet was left open, and that the aluminum security shade and Plexiglas security flap had been left open and unsecure.

35.    Also on April 2, 2018, Plaintiff submitted her tenth written protected disclosure when she submitted an email to Johnson.  In her tenth written protected disclosure under the Public and Private WBA, Plaintiff provided Johnson with a copy her above referenced complaint (Plaintiff's eighth written protected disclosure) concerning Ms. McDaniel and her inappropriate conversations with an inmate.

36.    The following day, on or about April 3, 2018, in direct retaliation for Plaintiff having made the above referenced written protected disclosures, Plaintiff's manager, Health Services Administrator, Tara Johnson, falsely notified the H.R. department that Plaintiff had submitted a verbal resignation.  On or about April 4, 2018, upon learning that Johnson had retaliated against Plaintiff by falsely notifying H.R. that she had submitted a verbal resignation, Plaintiff submitted her eleventh written protected disclosure, via email, to Sarah Brus.  In her eleventh

written protected disclosure under the Public and Private WBA, Plaintiff explained to Ms. Brus that she had not submitted a verbal resignation and complained that Ms. Johnson had falsely reported that Plaintiff had submitted a verbal resignation in retaliation for her prior complaints.

37.     On or about April 9, 2018, in direct retaliation for the above referenced written protected disclosures, Ms. Cook and Ms. Johnson presented Plaintiff with a knowingly false and defamatory counseling form[4] for an incident which had allegedly occurred twelve (12) days prior on March 28, 2018. Additionally, upon being presented with the knowingly false and defamatory counseling form, Ms. Johnson and Ms. Cook began to question and intimidate Plaintiff for having made prior written complaints against Johnson and Cook, in direct violation of Plaintiff's rights of confidentiality.

38.     The following day, on or about April 10, 2018, Plaintiff submitted her twelfth written protected disclosure, via email, to Sarah Brus.   In her twelfth written protected disclosure under the Public and Private WBA as well as the FCRA, Plaintiff complained that:

> a.     the counseling form presented to her the previous day by Ms. Johnson and Ms. Cook was done in direct retaliation for

---

[4] The counseling form is not considered discipline, and it did not constitute "adverse personnel action" or "retaliatory personnel action" as defined under the Public and Private WBA.

Plaintiff having made prior written complaints concerning Ms. Cook and Ms. Johnson;

b.      Ms. Johnson's prior knowingly false report to H.R. that Plaintiff had submitted a verbal resignation was also done in direct retaliation for Plaintiff having made prior written complaints concerning Ms. Cook and/or Ms. Johnson;

c.      Ms. Johnson and Ms. Cook had knowingly violated Plaintiff's rights of confidentiality and were attempting to intimidate and retaliate against Plaintiff for submitting prior written complaints concerning Ms. Johnson, Ms. Cook and Ms. McDaniel;

d.      Ms. Johnson had created the likelihood of repeated hostility and retaliatory behavior by disclosing to Ms. Cook information regarding Plaintiff's previous written complaints pertaining to incidents involving Ms. Cook and other staff members; and

e.      Ms. Johnson and Ms. Cook had created a hostile working environment, and Plaintiff had become extremely intimidated and fearful of additional retaliation.

39.     As set forth above, Plaintiff's written protected disclosures, all of which include complaints of unlawful employment practices, sexual harassment, hostile working environment, and multiple acts or suspected acts of malfeasance

15

and/or misfeasance and multiple violations or suspected violations of laws, rules, and/or regulations committed by employees or agents of Defendants, were not made in bad faith or for a wrongful purpose.  Further, not only were Plaintiff's written protected disclosures not made in bad faith or for a wrongful purpose, but most if not all of Plaintiff's protected disclosures have been substantiated by Defendants as true and actual violations of applicable laws, rules, and/or regulations.

40.    Plaintiff was actually discharged by Defendants on April 26, 2018, in retaliation, at least in part, for having made protected disclosures under the Public and Private WBA and the FCRA.  Upon information and belief, the decision to discharge Plaintiff was made by her supervisor/manager, Tara Johnson, and her direct supervisor, Lori Cook.  Further, at the time the decision was made to discharge Plaintiff, both Tara Johnson and Lori Cook had actual knowledge of all of Plaintiff's above referenced protected disclosures under the Public and Private WBA and the FCRA.

## COUNT I – VIOLATION OF THE PUBLIC WBA

41.    Plaintiff realleges and incorporates the allegations in paragraphs 1-40 above as if fully set forth herein.

42.    As outlined *supra*, prior to her actual discharge, Plaintiff submitted multiple written protected disclosures, as defined by the Public WBA, to her

supervisors/managers, the FDOC, and other appropriate persons having the authority to investigate, police, manage, or otherwise remedy the violations or acts which Plaintiff complained of.

43.   On April 26, 2018, after Plaintiff had made multiple written protected disclosures and engaged in protected activities under the Public WBA, Plaintiff was actually discharged by Defendants.

44.   Plaintiff's written protected disclosures under the Public WBA were not made in bad faith or for a wrongful purpose, and they were not made after Defendants had initiated "adverse personnel action" against Plaintiff.

45.   There is a clear causal connection between the submission of Plaintiff's written protected disclosures and her protected activities under the Public WBA and her retaliatory discharge thereafter.   Further, the unlawful retaliatory discharge of Plaintiff by Defendants was purposeful.

46.   As a direct and proximate result of the foregoing unlawful acts of Defendants in violation of the Public WBA, Plaintiff has suffered mental anguish, emotional distress, loss of dignity, expense, loss of benefits, embarrassment, humiliation, damage to her reputation, lost wages, loss of future earning capacity, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages have occurred in the past, are continuing and permanent.

Additionally, Plaintiff is entitled to injunctive/equitable relief enjoining Defendants from future violations of the Public WBA.

47.     Therefore, Plaintiff hereby requests all relief required under Section 112.3187(9), Florida Statutes, including the relief of temporary and permanent reinstatement to the position Plaintiff held before her unlawful discharge, or to an equivalent position or reasonable front pay as alternative relief; reinstatement of Plaintiff's full fringe benefits and seniority rights; compensation for lost wages, benefits, and all other lost remuneration caused by the unlawful termination; payment of costs and attorneys' fees pursuant to Section 112.3187(9)(d), Florida Statute; pre and post-judgment interest, and all other relief this Courts finds just and appropriate.

**WHEREFORE**, Plaintiff respectfully requests that this Court determine that she is entitled to all relief prayed for herein as well as all such other relief as the Court deems just and proper, including an order requiring that Defendants pay Plaintiff's costs and attorneys' fees incurred in bringing this action pursuant to Section 112.3187(9)(d), Florida Statutes.

## <u>COUNT II – VIOLATION OF THE PRIVATE WBA</u>

48.     Plaintiff realleges and incorporates the allegations in paragraphs 1-40 above as if fully set forth herein.

49.     Plaintiff was an "employee" of Defendants as defined under Fla. Stat. § 448.101(2).

50.     Defendants, at all times material hereto, were Plaintiff's "employers," as defined under Fla. Stat. § 448.101(3), that employed ten or more persons.

51.     As outlined *supra*, prior to her actual discharge, Plaintiff submitted multiple written protected disclosures protected under the Private WBA wherein she disclosed and complained of activities, policies and practices of Defendants that were in violation of laws, rules and/or regulations.

52.     Additionally, prior to her actual discharge, Plaintiff objected to and refused to participate in activities, policies and practices of Defendants that were in violation of laws, rules and/or regulations.

53.     Plaintiff's written protected disclosures under the Private WBA were submitted to her supervisors/managers, the FDOC and/or other appropriate persons charged with the enforcement of laws, rules, and/or regulations governing Defendants' activities, policies, and/or practices.

54.     After Plaintiff submitted her written protected disclosures under the Private WBA, Defendants were afforded a reasonable opportunity to correct the activities, policies, and/or practices that were in violation of applicable laws, rules, and/or regulations.

55.    On April 26, 2018, after Plaintiff had made multiple written protected disclosures and engaged in protected activities under the Private WBA, Defendants committed retaliatory personnel action against Plaintiff by actually discharging her.  Defendants' actual discharge of Plaintiff was done in retaliation for, and as a direct result of, Plaintiff's written protected disclosures and protected activities under the Private WBA.

56.    Plaintiff's written protected disclosures and protected activities under the Private WBA were not done in bad faith or for a wrongful purpose, and they were not done after Defendants had initiated adverse personnel action against Plaintiff.

57.    There is a clear causal connection between the submission of Plaintiff's written protected disclosures and her protected activities under the Private WBA and her retaliatory discharge thereafter.  Further, the unlawful retaliatory discharge of Plaintiff by Defendants was purposeful.

58.    As a direct and proximate result of the foregoing unlawful acts of Defendants in violation of the Private WBA, Plaintiff has suffered damages, including but not limited to mental anguish, emotional distress, loss of dignity, expense, loss of benefits, embarrassment, humiliation, damage to reputation, lost wages, loss of future earning capacity, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages have occurred in the

past, are continuing and permanent. Additionally, Plaintiff is entitled to injunctive/equitable relief enjoining Defendants from future violations of the Private WBA.

59. Therefore, Plaintiff hereby requests all relief available under Fla. Stat. § 448.103, including an injunction restraining continued violation of the Private WBA; reinstatement of Plaintiff to the same position she held before her unlawful discharge, or to an equivalent position or reasonable front pay as alternative relief; reinstatement of Plaintiff's full fringe benefits and seniority rights; compensation for lost wages, benefits, and all other lost remuneration caused by the unlawful termination; any other compensatory damages allowable at law; payment of costs, expenses, and attorneys' fees pursuant to Section 448.104, Florida Statute; pre and post-judgment interest, and all other relief this Courts finds just and appropriate.

**WHEREFORE**, Plaintiff respectfully requests that this Court determine that she is entitled to all relief prayed for herein as well as all such other relief as the Court deems just and proper, including an order requiring that Defendants pay Plaintiff's costs, expenses, and attorneys' fees incurred in bringing this action pursuant to Section 448.104, Florida Statutes.

<u>**COUNT III – UNLAWFUL RETALIATION**</u>
<u>**IN VIOLATION OF THE FCRA**</u>

60. Plaintiff realleges and incorporates the allegations in paragraphs 1-27 and 38-40 above as if fully set forth herein.

21

61.    As outlined *supra*, prior to her actual discharge, Plaintiff submitted multiple written protected disclosures protected under the FCRA opposing unlawful employment practices under the FCRA which were being committed by employees and/or agents of Defendants.

62.    Plaintiff's written protected disclosures under the FCRA were submitted to her supervisors/managers, the FDOC and/or other appropriate persons having the authority to investigate, police, manage, or otherwise remedy the violations or acts of which Plaintiff complained.

63.    On April 26, 2018, after Plaintiff had made multiple written protected disclosures under the FCRA, Plaintiff was actually discharged by Defendants.

64.    Plaintiff's written protected disclosures under the FCRA were not made in bad faith or for a wrongful purpose, and they were not made after Defendants had initiated adverse personnel action against Plaintiff.

65.    Plaintiff is a member of a protected class because she submitted written protected disclosures to Defendants alleging unlawful employment practices under the FCRA, and she was subjected to unlawful retaliation thereafter.

66.    There is a clear causal connection between the submission of Plaintiff's written protected disclosures under the FCRA and her retaliatory discharge thereafter.  Further, the unlawful retaliatory discharge of Plaintiff by Defendants was purposeful.

67.    As a direct and proximate result of the foregoing unlawful acts of Defendants in violation of the FCRA, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to her reputation, lost wages, loss of future earning capacity, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages have occurred in the past, are continuing and permanent.  Additionally, Plaintiff is entitled to injunctive/equitable relief enjoining Defendants from future violations of the FCRA.

68.    Therefore, Plaintiff hereby requests all relief available under the FCRA, including an order prohibiting the discriminatory practices of Defendants and an order awarding Plaintiff back pay; compensatory damages for mental anguish, loss of dignity, and any other intangible injuries including punitive damages; pre and post-judgment interest; an order requiring Defendants to pay Plaintiff's costs and attorneys' fees in bringing this action pursuant to Section 760.11(5), Florida Statutes, and all other relief this Courts deems just and appropriate.

**WHEREFORE**, Plaintiff respectfully requests that this Court determine that she is entitled to all relief prayed for herein as well as all such other relief as the Court deems just and proper, including an order requiring that Defendants pay

Plaintiff's costs and attorneys' fees incurred in bringing this action pursuant to Section 760.11(5), Florida Statutes.

**COUNT IV**
**PETITION FOR IMMEDIATE TEMPORARY REINSTATEMENT**
**PURSUANT TO SECTION 112.3187(9)(f), FLORIDA STATUTES**

69.     Plaintiff realleges and incorporates the allegations in paragraphs 1-40 above as if fully set forth herein.

70.     Pursuant to Fla. Stat. § 112.3187(9)(f) of the Public WBA, this Court, as a court of competent jurisdiction, has the authority to grant Plaintiff the required relief of temporary reinstatement to her former position or to an equivalent position, pending the final outcome on her complaint.

71.     Section 112.3187(9), Florida Statutes provides that, "[i]n any action brought under [the Public WBA], the relief *must* include":

> (f) Temporary reinstatement to the employee's former position or to an equivalent position, pending the final outcome on the complaint, *if an employee complains of being discharged in retaliation for a protected disclosure and if a court of competent jurisdiction* or the Florida Commission on Human Relations, as applicable under *s. 112.31895*, *determines that the disclosure was not made in bad faith or for a wrongful purpose* or occurred after an [employer's] initiation of a personnel action against the employee which includes documentation of the employee's violation of a disciplinary standard or performance deficiency *[Emphasis added]*.

24

*Fla. Stat. § 112.3187(9)*.  It is well settled in Florida that, in order to receive the remedy of temporary reinstatement under the Public WBA, a plaintiff employee must demonstrate the following:

> a)   prior to termination she made a disclosure protected by the statute;
>
> b)   she was discharged; and
>
> c)   the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after an employer's personnel action against the employee.

*Fla. Stat. § 112.3187(9), see also DOT v. Fla. Comm'n on Human Rels.*, 842 So. 2d 253 (Fla. 1st DCA 2003) *citing Lindamood v. Office of the State Attorney, Ninth Judicial Circuit of Florida*, 731 So. 2d 829, 831 (Fla. 5th DCA 1999).

72.   As set forth *supra*, prior to her actual discharge on April 26, 2018, Plaintiff made multiple protected disclosures under the Public WBA.

73.   As set forth above, Plaintiff's protected disclosures, which include multiple acts of malfeasance and/or misfeasance and multiple violations or suspected violations of laws, rules, and/or regulations committed by employees of Defendants, were not made in bad faith or for a wrongful purpose.  Further, not only were Plaintiff's protected disclosures not made in bad faith or for a wrongful purpose, but most if not all of Plaintiff's protected disclosures have been substantiated as true and actual violations of applicable laws, rules, and/or regulations.

74.    Additionally, prior to her actual discharge on April 26, 2018, Defendants had never initiated "adverse personnel action[5]" against Plaintiff.

## DISCLOSURES AND ACTIVITIES PROTECTED BY THE PUBLIC WBA

**A.    Nature of Information Disclosed:**

75.    Section 112.3187(5), Florida Statutes, titled "*Nature of information disclosed*," provides that, "[t]he information disclosed under this section must include:

> (a)    Any violation or ***suspected violation*** of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
>
> (b)    Any act or ***suspected act*** of gross mismanagement, ***malfeasance***, ***misfeasance***, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor ***[Emphasis added]***.

*Fla. Stat. § 112.3187(5)*.

76.    As outlined supra, "the [Public WBA] provides that an employee may bring an action when the whistle-blowing concerns '[a]ny … ***suspected*** violation of any … law, rule, or regulation committed by an employee or agent of an agency,' or with respect to '[a]ny . . . ***suspected*** act of  . . . ***misfeasance*** . . . or

---

[5] "Adverse personnel action," as defined by Fla. Stat. § 112.3187(3)(c), "means the discharge, suspension, transfer, or demotion of any employee or the withholding of bonuses, the reduction in salary or benefits, or any other adverse action taken against an employee within the terms and conditions of employment by an agency or independent contractor."

gross neglect of duty committed by an employee or agent of an agency [*Emphasis Added*]."  *Irven v. Dep't of Health and Rehabilitative Servs.*, 790 So. 2d 403, 406 (Fla. 2001); *see* also *King v. Florida*, 650 F. Supp. 2d 1157, 1163 (N.D. Fla. 2009)(holding that "a potential complainant is not required to use formal legalistic language in order to lodge a complaint that invokes whistle-blower protection").

77.     Furthermore, the Supreme Court of Florida noted in *Irven* that "[m]isfeasance is defined as the 'improper doing of an act which a person might lawfully do; and 'malfeasance' is the doing of an act which a person ought not do at all.'"  *Id*. at 407 n.3 (quoting Black's Law Dictionary 1000 (6th ed. 1990)); *see* also *Kimmons v. Crawford*, 92 Fla. 652, 109 So. 585, 587 (Fla. 1926)(defining misfeasance as "the performance of an act in a unlawful, injurious, or negligent manner").

78.     Finally, in *Rosa v. Dep't of Children & Families*, the First District Court of Appeal, in considering the rulings from the Florida Supreme Court, found that "*misfeasance" includes "negligent acts committed by an employee of an agency [or independent contractor]*."  Rosa v. Dep't of Children & Families, 915 So. 2d 210, 212 (Fla. 1st DCA 2005) [*Emphasis Added*].

**B.     To Whom Information Disclosed:**

79.     Section 112.3187(6), Florida Statutes, titled "To whom information disclosed," provides in pertinent part as follows:

27

> [t]he information disclosed under this section must be disclosed to any agency or federal government entity having the authority to investigate, police, manage, or otherwise remedy the violation or act, including, but not limited to, the Office of the Chief Inspector General, an agency inspector general or the employee designated as agency inspector general under § 112.3189(1) or inspectors general under § 20.055, the Florida Commission on Human Relations, and the whistle-blower's hotline created under § 112.3189. . .

*Fla. Stat. § 112.3187(6).*

## C.      **Employees and Persons Protected:**

80.      Finally, Section 112.3187(7), Florida Statutes, titled "Employees and persons protected," provides in pertinent part as follows:

> [t]his section protects employees and persons who disclose information on their own initiative in a written and signed complaint; who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity; who refuse to participate in any adverse action prohibited by this section; or who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs; or ***employees who file any written complaint to their supervisory officials*** or employees who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general under § 112.3189(1), or to the Florida Commission on Human Relations. . . [***Emphasis added***]

*Fla. Stat. § 112.3187(7).*

***Plaintiff's Protected Disclosures Were Not Made in Bad Faith or for a Wrongful Purpose, and They did not Occur After Defendants Initiated Adverse Personnel Action Against Plaintiff***

81.     As outlined supra, Plaintiff engaged in protected activity and was terminated.  At the time of Plaintiff's protected activity, Defendants had not initiated any adverse personnel action against Plaintiff.  Further, all of the above-referenced activities and conduct of State employees and/or independent contractors which prompted Plaintiff to blow the whistle involved violations of laws, rules, or regulations and/or acts of malfeasance, misfeasance, or gross mismanagement, which were actually occurring or which Plaintiff reasonably suspected to be occurring.  Therefore, for the reasons outlined supra, there is no evidence that any of Plaintiff's protected disclosures were made in bad faith or for a wrongful purpose.

82.     Finally, at this time, Plaintiff requests the relief of temporary reinstatement to Plaintiff's former position or to an equivalent position, pending the final outcome on Plaintiff's complaint, pursuant to Section 112.3187(9)(f), Florida Statutes, including reinstatement of Plaintiff's full fringe benefits and seniority rights; compensation for Plaintiff's lost wages, benefits, and any other lost remuneration caused by Defendants' wrongful termination of Plaintiff; as well as payment of attorneys' fees and reasonable costs pursuant to Section 112.3187(9)(d), Florida Statutes.  Lastly, because the purpose of temporary

reinstatement is to keep an employee on the job pending resolution of her underlying Public Whistle-blowers' complaint, Plaintiff respectfully requests a full evidentiary hearing as soon as reasonably possible.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter an order granting Plaintiff's Petition for Temporary Reinstatement, reinstating Plaintiff to the same position or to an equivalent position held before the adverse action was commenced, including reinstatement of Plaintiff's full fringe benefits and seniority rights, lost wages and benefits, and any other lost remuneration caused by the adverse employment action, as well as payment of attorneys' fees and reasonable costs.

## **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all issues so triable.

**DATED** this 31st day of March, 2020.

Respectfully submitted,

*/s/  Brian O. Finnerty*
Brian O. Finnerty, Esq.
The Law Office of Brian O.
Finnerty, P.A.
541 Beverly Court
Tallahassee, FL 32301
brianofinnerty@gmail.com
*Counsel for Plaintiff*

*/s/  Steven R. Andrews*
Steven R. Andrews, Esq.
The Law Offices of Steven R.
Andrews, P.A.
822 North Monroe Street
Tallahassee, FL  32303
steve@andrewslaw.com
service@andrewslaw.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of March 2020, a true and correct copy of the foregoing was filed electronically with the Clerk of Court through the eFiling Portal, which shall serve a copy via Email to all counsel of record.

*/s/ Brian O. Finnerty*
BRIAN O. FINNERTY

*/s/ Steven R. Andrews*
STEVEN R. ANDREWS