**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**VIRGINIA E. HARRELL,**

     **Plaintiff,**

**v.**                                 **Case No. 4:20-cv-30-AW-MJF**

**MHM HEALTH PROFESSIONALS,
LLC, f/k/a MHM HEALTH
PROFESSIONALS, INC., and
CENTURION OF FLORIDA, LLC,**

     **Defendants.**

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SUMMARY JUDGMENT MOTION

MHM Health Professionals, LLC, and Centurion of Florida, LLC, provide healthcare services to Florida inmates. ECF No. 1-2 at 2; ECF No. 9 (FAC). Virginia Harrell has sued the companies, alleging they terminated her as retaliation for her reporting workplace misconduct. Her claims are based on Florida's public and private whistleblower laws and the Florida Civil Rights Act. FAC.

MHM moves for summary judgment.[1] ECF No. 32. It says that although Harrell was a frequent complainer, none of her complaints qualified for whistleblower protection. And regardless, MHM argues, it terminated Harrell for legitimate reasons—not because she complained.

---

[1] This order refers to both defendants collectively as "MHM."

1

# I. Summary Judgment Standard

To prevail on summary judgment, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering whether a genuine dispute exists as to a material fact, the court must draw all reasonable inferences and resolve all disputes in favor of the non-moving party. *See Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The parties must "cit[e] to particular parts of materials in the record" to support their factual positions. Fed. R. Civ. P. 56(c)(1)(A). The court may—but need not—consider other record materials. Fed. R. Civ. P. 56(c)(3). (I have declined to consider record materials not cited in the parties' briefs or addressed in this order.)

# II. Facts

The facts, drawn from the summary-judgment record and viewed in a light most favorable to Harrell, are these: Harrell worked for MHM as a nurse from May 2016 until her April 2018 firing. ECF Nos. 37-10, 37-98. She had several supervisors including Tara Johnson, Kathleen Rudolph, Brandi Blocker, and Lori Cook. Beginning in December 2017, Harrell lodged several complaints:

- December 15, 2017—Harrell emailed Sarah Brus (MHM's "Human Resources Business Partner"), complaining that Blocker was exhibiting "favoritism" and not giving her enough hours. Harrell mentioned in passing that Blocker would "tell the newly assigned nurse she is cute, as she twirls her hair." Harrell also mentioned that she was "fearful of retaliation." ECF No. 37-38.

2

- December 18, 2017—Harrell emailed Johnson (from her personal email account) to complain that Cook told subordinates she planned to buy her sisters sex toys for Christmas "so they could go F*** themselves." ECF No. 37-40.

- January 9, 2018—Harrell submitted an "incident report" saying a coworker (DelCarlo) had refused to provide mental health services to an inmate with a self-declared psychological emergency. ECF No. 37-42.

- March 29-30, 2018—Harrell emailed Johnson, asking to speak with her. ECF No. 37-45. They met the next day and Harrell reported concerns, which Johnson documented in an email to Brus and others. ECF No. 37-46. Harrell told Johnson this:

  - Nurse McDaniel was having improper relations with an inmate, leaving the pillroom door open, and allowing the inmate into the pillroom.

  - Nurse Long was also having improper inmate relations.

  - Cook told Nurse West to sign the narcotic log without first conducting a narcotics count.

- March 30, 2018—Harrell emailed Johnson again to separately report that Cook, McDaniel, and another person were signing the narcotics log without following proper procedures. ECF No. 37-47.

- March 30, 2018—Harrell sent Johnson two emails following up on their conversation. She attached incident reports with more information about her belief about McDaniel's and Long's inappropriate inmate relations. ECF Nos. 37-51, 37-56.

- April 2, 2018—Harrell submitted an incident report saying an inmate heard from another inmate who supposedly talked to Nurse McDaniel about Harrell's complaints about that inmate—and that McDaniel blamed Harrell for "drama" in the unit. ECF No. 37-63.

- April 2, 2018—Harrell emailed Johnson saying the pillroom had been left unsecured. ECF No. 37-64.

3

- April 10, 2018—Harrell emailed Brus about the "'final written' warning" Johnson gave her, purportedly for improper inmate relations. Harrell said she believed Johnson was retaliating against her by issuing the warning and by falsely telling HR that Harrell had resigned. She was also concerned that Johnson had violated her whistleblower confidentiality by sharing her complaints with their subjects. ECF No. 37-67.

Around the time of Harrell's first complaint (the December 15 email), she received verbal counseling about time and attendance issues. ECF No. 31-3 at 80:17-22; ECF No. 31-17. In March 2018, Harrell was promoted to ADA and infection control nurse with the understanding that the position had set hours. ECF No. 31-3 at 59-60. Although MHM says Harrell was consistently late, MHM issued no further discipline for tardiness before Harrell's termination. *See* ECF No. 31-22.

On April 9—shortly after Harrell's several complaints about narcotics and pillroom issues and improper inmate relations—Harrell received a "final warning" for allowing an unaccompanied inmate in her office. ECF No. 31-3 at 89:5-23; ECF No. 31-19. When presented with the final warning, she was also confronted about emails she sent from her work account to her personal account. ECF No. 31-2 at 28:13-29:6; ECF No. 31-3 at 100:19-101:2. The next day, Harrell emailed Brus, again complaining of retaliation and a hostile work environment. ECF No. 37-67. Shortly after that, MHM accused Harrell of failing to do a narcotics count when assigned to the pill room (something Harrell had earlier reported other nurses for). ECF No. 31-4 at 118:3-119:15; ECF No. 31-22.

MHM fired Harrell on April 26, 2018. ECF No. 31-22. The termination paperwork said she was fired for (1) sending confidential documents to her personal email, (2) narcotics log violations, and (3) consistent tardiness. ECF No. 31-22.

Harrell then filed a complaint with the Florida Commission on Human Relations, and she later got a job at Graceville Correctional Institute. ECF No. 31-3 at 22-23, 25. She lost that job after just four days (while still in training). ECF No. 31-3 at 24-25.

Although this is a close call, I find that Harrell has shown evidence from which a jury could conclude that the reasons MHM has proffered for her termination were pretextual and that the real reason was one or more of her protected disclosures.

### III. PROTECTED DISCLOSURES

Harrell sued under three separate anti-retaliation statutes: the Florida Private Whistle-Blowers' Act, the Florida Public Whistle-Blowers' Act, and the Florida Civil Rights Act. To establish a prima facie case under each, a plaintiff must show the same three basic elements: (1) a statutorily protected activity, (2) an adverse employment action, and (3) a causal connection. *See Carter v. Health Mgmt. Assocs.*, 989 So. 2d 1258, 1263 (Fla. 2d DCA 2008) (FRCA); *Nazzal v. Fla. DOC*, 267 So. 3d 1094, 1096 (Fla. 1st DCA 2019) (Public-WBA); *Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 2020 WL 6370333, at *2 (Fla. 5th DCA Oct. 30, 2020) (Private-

WBA). Although the causation standard is the same for all three,[2] there are differences in the activities each statute protects. *Cf. Sussan v. Nova Se. Univ.*, 723 So. 2d 933, 934 (Fla. 4th DCA 1999) ("[T]he activity proscribed by the Private and Public Whistle Blower Acts differs significantly."). MHM argues Harrell's complaints were not protected activities. I agree with MHM as to some, but not all.

### A. Private-WBA

The Private Act prohibits retaliation against employees because they "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). First, MHM says that Harrell complained only about violations of company policies, which the Private-WBA does not protect. And even if Harrell's complaints alleged law violations, MHM contends there was no *actual* violation, which the Private-WBA requires. ECF No. 32 at 18-21. Separately, MHM argues Harrell's disclosures concerned the actions of other employees—not her employer—providing an independent reason why there was no protected disclosure.[3]

---

[2] *Palm Beach Cnty. Sch. Bd. v. Wright*, 217 So. 3d 163, 165 (Fla. 4th DCA 2017) (holding that *Nassar*'s but-for standard "must be applied with equal force to FCRA retaliation claims" and receding from earlier precedent applying the "wholly unrelated" causation standard); *Chaudhry*, 2020 WL 6370333, at *5 ("*Nassar* requires the use of a 'but for' rather than a 'motivating factor' causation standard when analyzing claims under Florida's [Private-WBA].").

[3] MHM argued at the hearing that Harrell's complaints were not protected under the Private-WBA because they were not "under oath, in writing," as

*1.*

First, MHM says that Harrell's complaints were about violations of company policy—not about "violation[s] of a law, rule, or regulation." Fla. Stat. § 448.102 (1, 2, & 3). ECF No. 32 at 14-16 (citing *New World Commc'ns of Tampa, Inc. v. Akre*, 866 So. 2d 1231, 1233 (Fla. 2d DCA 2003), *on reh'g* (Feb. 25, 2004)). Harrell identifies multiple laws and rules she says her complaints addressed, and at least as to some, she is correct.

Several of Harrell's complaints, though, do not qualify because Harrell cannot tie them to any violation of law: her December 15, 2017 complaint about Blocker (regarding hours and favoritism); her January 9, 2018 complaint about DelCarlo[4]; her April 2, 2018 complaint about McDaniel (regarding things she heard thirdhand from an inmate). These were not protected under the Private-WBA.

As to her December 18, 2017 complaint about Cook, Harrell argues this concerned a violation of FCRA and F.A.C. Rule 33-208.003(39) (a validly

---

§ 448.102(1) requires. But the Florida Supreme Court has held that this writing requirement inapplicable to claims brought under subsection (3). *Golf Channel v. Jenkins*, 752 So. 2d 561, 565 (Fla. 2000).

[4] Harrell says in her response that this violated FDC Procedures 403.006 and 404.001, but the Public-WBA limits the definition of "rule" to adopted rules, and Florida courts have held that "the legislature's use of the word 'adopted' in the statute to be a limitation on the scope of conduct that will subject an employer to liability under the statute." *Akre*, 866 So. 2d at 1234 (citing *Forrester v. John B. Phipps, Inc.*, 643 So.2d 1109 (Fla. 1st DCA 1994)).

promulgated rule prohibiting discrimination and harassment). As explained below, *see* section III.C., the conduct Harrell complained of did not constitute sexual harassment (nor could Harrell have reasonably believed it did) so this was also not protected.

The remaining six complaints did relate to violations of law or rules—or at least a jury could find they did. More specifically, a jury could conclude that the remaining complaints concerned violations of FDC Rules about inmate relations, F.A.C. Rule 33-208.002(26), narcotics protocols, F.A.C. Rule 33-208.002(6), and falsification of records, F.A.C. Rule 33-208.002(12) and (19).[5] *See* ECF No. 39 at 35-36 (also citing Fla. Stat. §§ 839.13(1), 395.302(1), 464.018(1)(f)).[6]

---

[5] These FDC rules apply to MHM employees. *See* F.A.C. Rule 33-208.001(5).

[6] MHM makes one other argument. It says at her deposition, Harrell could not identify a law, rule, or regulation that her complaints alleged was violated. So, MHM argues, they must not count. I find this argument unpersuasive for two reasons. First, MHM's characterization of Harrell's deposition testimony is not entirely accurate. Harrell testified that "I know that Amanda McDaniel, without a shadow of a doubt, violated Florida Department of Correction's Rules of Conduct." ECF No. 31-4 at 189; *id.* ("[T]hat violated everything."). She also said that the narcotics violations contravened the Florida Board of Nursing's policies, *id.* at 189-90, and stated that MHM employees were required to follow FDC Rules of Conduct, *id.* at 174. Additionally, Harrell clarified in her declaration that "by no means was [she] suggesting that such conduct was not also violative of laws, rules, and/or regulations." ECF No. 37-99 (Harrell Decl.) ¶ 26. But more importantly, the statute does not require that the whistleblower know the conduct complained about violated the law—much less what specific law it violated. The statute prohibits retaliation against any employee who "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which *is* in violation of a law, rule, or

Because I conclude that Harrell has shown a triable issue as to whether the six remaining disclosures alleged violations of a "law, rule, or regulation," I next address MHM's argument that Harrell must show the disclosures concerned *actual* violations. Although MHM acknowledges a split of authority on the issue, it argues that good-faith or reasonable allegations of unlawfulness are not enough; the complaints must address a real violation. ECF No. 32 at 18; *compare Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013) (holding that "a good faith, objectively reasonable belief" is sufficient), *with Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 465 (Fla. 2d DCA 2015) (holding that a plaintiff must show that she objected to or refused to participate in an actual violation). I conclude I need not decide this issue (at least not now) because Harrell has shown a triable issue as to whether her disclosures concerned actual violations.

As to Harrell's allegations that Nurses Long and McDaniel were violating FDC's Rules of Conduct, a jury could conclude that an actual violation occurred. After all, MHM treated the situation as if there were a real violation. Following Harrell's disclosures, MHM prepared a "final warning" for Nurse Long, based on

---

regulation"—not any practice the employee *knew to be* in violation of a law, rule, or regulation. Fla. Stat. 448.102(3) (emphasis added). MHM cites *Nazzal*, where—unlike here—the plaintiff "admitted in her deposition testimony that her supervisor *did not violate any* law, rule, or FDC policy." 267 So. 3d at 1097 (cleaned up). Here, Harrell has admitted no such thing.

her violating FDC's Rules of Conduct. ECF No. 37-54. (Long resigned before it was delivered. *Id.*; ECF No. 37-55.) Plus, Nurse McDaniel either resigned or was terminated after Harrell's complaints. ECF No. 37-60 (resignation letter); ECF No. 37-61 (termination paperwork). The disciplinary paperwork for both women suggests that MHM investigated and substantiated Harrell's complaints. ECF No. 37-54; ECF No. 37-61. From this, a jury could infer an actual violation.

Harrell has also shown enough to substantiate her complaints about narcotics violations. Although MHM produced a narcotics log showing that a narcotics count was done at 11:00 a.m. on the day Harrell said the log was not properly completed, ECF No. 31-30, Harrell produced a different copy of the log, which she says suggests that the log was altered. *Compare* ECF No. 37-49, *with* ECF No. 37-50. Additionally, in response to Harrell's email about the pillroom door, Johnson responded "Received. Will need to take to the Major's office," ECF No. 37-64, and a sign was placed on the pillroom door stating "no inmates allowed in this pill room," ECF No. 37-65. A reasonable jury could thus find actual violations.

Finally, Harrell has produced evidence to substantiate her April 10 complaint about Johnson's retaliation. In her email, Harrell alleged that Johnson retaliated with the "final warning" and by falsely reporting to HR that she had resigned. ECF No. 37-67. As explained below, a jury could conclude that these incidents were not

10

miscommunications or legitimate workplace discipline but were pretext for unlawful retaliation.

So as described above, Harrell has presented sufficient evidence that some—but not all—of the disclosures related to actual violations of law and not merely company policy. But that does not end the "protected disclosure" inquiry.

*2.*

MHM also argues that Harrell's complaints are not protected for a separate reason—they concerned the actions of her coworkers and not MHM. The Private-WBA only protects employees who disclose activities "of the employer" or "by the employer." Fla. Stat. § 448.102(1, 2, & 3); *see also McIntyre v. Delhaize Am., Inc.*, 2009 WL 1039557, at *3 (M.D. Fla. Apr. 17, 2009) ("The actions of an employee, as opposed to a defendant employer, [are] irrelevant to, and cannot adequately support a claim based under the [Private-WBA]."), *aff'd*, 403 F. App'x 448 (11th Cir. 2010); *see also Kogan v. Israel*, 211 So. 3d 101, 108 (Fla. 4th DCA 2017). But an employee's actions can be attributable to the employer if the employee was acting within the scope of her employment or the employer ratifies the conduct. *See Ruiz v. Aerorep Grp. Corp.*, 941 So. 2d 505, 507 (Fla. 3rd DCA 2006); *see also Aery*, 118 So. 3d at 916; *Sussan*, 723 So. 2d at 934.

Harrell offers little to suggest that her coworkers' misconduct was within the scope of their employment or that MHM ratified it. With one exception, I find that

the six remaining disclosures did not relate to violations attributable to MHM. They are therefore not protected under the Private-WBA.

An employee's conduct is attributable to the employer for these purposes only if the employee acts "with the purpose of benefiting the interests of the employer." *Ruiz*, 941 So. 2d at 507. Harrell said other nurses were violating inmate-relations and narcotics-accounting policies, but there is no showing that they did so to benefit MHM. Plus, many of the violations occurred when the nurses were off the clock. And rather the ratify those employees' actions, MHM disciplined many of those involved. At bottom, Harrell has presented no evidence that these actions should be attributable to MHM. So she cannot show that most of the six remaining complaints were protected disclosures. Her April 10 complaint, however, is a different story.

Harrell's April 10 email complained that the "final warning" Johnson issued was retaliation for her earlier complaints. ECF No. 37-67. This complaint addressed alleged violations of law (the *Public*-WBA). And a jury could find that Johnson was acting within the scope of her employment when she issued the warning or, alternatively, that MHM ratified Johnson's conduct. Accordingly, I conclude that Harrell has shown a triable issue as to whether her April 10th email was a protected disclosure under the Private-WBA. However, I find that this is the *only* potential protected disclosure under the Private-WBA.

## B. Public-WBA

Florida's Public-WBA protects employees who disclose a "violation or suspected violation of any federal, state, or local law, rule, or regulation" or an "act or suspected act of gross mismanagement, malfeasance, misfeasance, . . . or gross neglect of duty committed by an employee or agent of an agency or independent contractor." Fla. Stat. § 112.3187(5)(a)-(b). It protects only those, though, who disclose the information "to any agency or federal government entity having the authority to investigate, police, manage, or otherwise remedy the violation." Fla. Stat. § 112.3187(6). MHM argues that Harrell's disclosures did not concern a protected subject matter and were not made to a qualifying "agency" or "entity." MHM is correct as to some of the complaints.

### *1.*

First, unlike the Private-WBA, the Public-WBA protects employees who disclose other employees' misconduct (or suspected misconduct), even when not attributable to the employer. *See* Fla. Stat. § 112.3187(5); *see also Kogan*, 211 So. 3d at 107. The Public Act also protects employees who disclose "misfeasance," which Florida courts have interpreted broadly enough to include negligent acts. *Rosa v. DCF*, 915 So. 2d 210, 212 (Fla. 1st DCA 2005); *see also Irven v. Dep't of Health & Rehab. Servs.*, 790 So. 2d 403, 407 n.3 (Fla. 2001) (defining "misfeasance" to mean "the improper doing of an act which a person might lawfully do" (quoting

Black's Law Dictionary 1000 (6th ed.1990))). So the six disclosures that alleged violations of laws, rules, and regulations (*see* above) concerned—at the very least— "misfeasance" and were therefore protected under the Public Act. And as to the other four, I find (with one exception) that Harrell has shown a triable issue as to whether they count too.[7]

Harrell's December 2017 complaints against Blocker and Cook regarded "misfeasance." Harrell's complaint against Cook alleged an inappropriate workplace discussion, and her complaint against Blocker alleged favoritism and preferential treatment. *Cf. Rosa*, 915 So. 2d at 211 (holding that an employee's "'rant' to a supervisor over the allocation of duties and responsibilities within the department" could be construed as a protected disclosure); *cf. also Irven*, 790 So. 2d at 405 (Public-WBA is liberally construed). Harrell's January 2018 complaint alleging that DelCarlo violated FDC's policy by refusing to do an evaluation on an inmate who had self-declared a psychological emergency also concerned misfeasance.

Last, though, I find that Harrell's April 2, 2018, complaint reporting that an inmate told Harrell that Nurse McDaniel blamed her for causing "drama" among the

---

[7] Recall that those four were the December 2017 complaints about Blocker and Cook, ECF No. 37-38; ECF No. 37-40; the January 2018 complaint about DelCarlo, ECF No. 37-42; and the April 2018 report about what she heard from McDaniel thirdhand through an inmate, ECF No. 37-63.

nursing staff, was not protected.[8] Aside from this complaint, Harrell has shown a triable issue as to whether her disclosures concerned a protected subject matter under the Public-WBA.

*2.*

MHM argued at the hearing that Harrell's complaints were not protected because they were not disclosed to "any agency or federal government entity." *See* Fla. Stat. § 112.3187(6). There is clearly no evidence of any disclosure to a federal entity, so that leaves "agency," which the statute defines as "any state, regional, county, local, or municipal government entity, . . . [and] any official, officer, department, division, bureau, commission, authority, or political subdivision therein." Fla. Stat. § 112.3187(3)(a); *see also Burden v. City of Opa Locka*, 2012 WL 4764592, at *14 n.10 (S.D. Fla. Oct. 7, 2012) (holding that city manager was "an 'agency' for the purposes of the [Public-WBA]" (citing § 112.3187(3)(a))).

Harrell's complaints were to either her direct supervisor (Johnson) or to MHM's HR business partner (Brus). A written disclosure to a supervisory official, without more, is insufficient. *Kelder v. ACT Corp.*, 650 So. 2d 647, 649 (Fla. 5th

---

[8] This report contained multiple levels of hearsay—Harrell reported that an inmate told her, that a different inmate told him, that Nurse McDaniel had told that inmate, that Harrell "was the reason for the 'drama' with in [sic] the medical department." ECF No. 37-63. Even if this were not hearsay, it is unclear what Harrell was alleging or how it could constitute misfeasance.

DCA 1995).[9] It is undisputed, however, that at least some of Harrell's complaints were accompanied by "incident reports" later submitted to the Warden's office. ECF No. 31-2 at 29-30. At the hearing, MHM focused specifically on Harrell's March 30, 2018 email about narcotics violations. Rough Trans. at 117 (citing ECF No. 37-47). That email included an attachment with a short statement from Harrell describing the violations, ECF No. 37-47, but no "incident report" was attached, and Harrell has not produced any evidence that this email went to FDC, the warden, or anyone else qualifying as an "agency." So MHM is correct that this March 30 email, ECF No. 37-47, was not a protected disclosure. These disclosures are not covered for the same reason:

- Harrell's December 2017 complaints against Cook and Blocker. ECF No. 37-38; ECF No. 37-40.

- Harrell's March 30, 2018, verbal disclosure to Johnson. *See* ECF No. 37-46.

- Harrell's April 2, 2018, complaints regarding the pillroom and Nurse McDaniel. ECF No. 37-63; ECF No. 37-64.

- Harrell's April 10, 2018, complaint to Brus regarding Johnson's alleged retaliation. ECF No. 37-67.

---

[9] A separate provision, titled "employees and persons protected," provides that the Public-WBA protects "employees who file any written complaint to their supervisory officials." Fla. Stat. § 112.3187(7). But Florida courts have rejected the argument that this means it does not also have to be submitted to an "agency." *See Kelder*, 650 So. 2d at 649. In doing so, the court noted that "subsections (6) and (7) are no models of clarity, especially when read together." *Id.*

The complaints with incident reports, on the other hand, do qualify. These are the January 2018 complaint about DelCarlo, ECF No. 37-42, and the March 30, 2018, emails about Long's and McDaniel's inmate relations, ECF No. 37-51; ECF No. 37-56. Harrell testified that she submitted the incident reports to the security major who told her he was "sending them straight to the IGs [sic] office." ECF No. 31-3 at 95; *see also* Harrell Decl. ¶ 19. A reasonable jury could conclude that Harrell submitted this information either directly to prison security or to Johnson with the understanding that the complaint would be passed on to the appropriate FDC official.

### C. FCRA

The Florida Civil Rights Act prohibits employers from "discriminat[ing] against any person because that person has opposed any practice which is an unlawful employment practice under [§ 760.10]." Fla. Stat. § 760.10(7). The FCRA has the same substantive provisions as Title VII. *Chaudhry*, 2020 WL 6370333, at *2. Harrell claims she engaged in FCRA-protected activity by reporting sexual harassment (or at least what she perceived as sexual harassment). The question is whether her view that the activities constituted sexual harassment was objectively and subjectively reasonable.

Harrell only points to two complaints that she says concerned FCRA violations: her December 2017 complaints against Blocker and Cook. The first primarily concerned Harrell's belief that Blocker wasn't assigning her enough hours.

17

ECF No. 37-38. But Harrell's complaint mentioned that Blocker would sometimes "tell the newly assigned nurse she is cute, as she twirls her hair." ECF No. 37-38. In the second, Harrell complained about Cook's sex-toy remark. *See* ECF No. 37-40.

MHM argues that occasional offhand comments do not constitute sexual harassment or create a hostile work environment. ECF No. 32 at 21-23. And MHM is correct that the allegations in these two complaints would be insufficient to show a FCRA violation. (Harrell does not argue otherwise.) But, as MHM acknowledges, FCRA prohibits employers from retaliating against employees who complain in good faith about actions they *reasonably believe* to constitute FCRA violations. ECF No. 32 at 21. Harrell's argument, then, is that she had a reasonable, good-faith belief that these comments were unlawful, even though they were not.

Harrell points to the fact that Cook admitted to making the sex-toy comment and was disciplined for it. ECF No. 39 at 7 ¶ 6 (citing ECF No. 37-41), 35 ¶ 7(a). But the sex-toy comment was a single discrete incident. It is hard to defend the comment as appropriate, but even assuming Harrell subjectively believed it violated FCRA, I cannot conclude that her belief was objectively reasonable in light of the substantive law. *Cf. Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1351 (11th Cir. 1999) ("We do not mean to hold that the conduct opposed must actually be sexual harassment, but it must be close enough to support an objectively reasonable belief that it is."); *Branscomb v. Sec'y of Navy*, 461 F. App'x 901, 906 (11th Cir. 2012)

(good faith belief that Title VII prohibits disability-based discrimination not objectively reasonable); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) (same for gender-discrimination claims based on hair-length policies). And as to the hair-twirl comment, I likewise see no plausible basis for anyone to think that was a FCRA violation.

Therefore, Harrell has not shown a triable issue as to FCRA retaliation, so MHM's motion will be granted as to this count.

## IV. Causation

To this point, I have found that Harrell has shown a triable issue as to whether these disclosures were protected:

- The January 9, 2018 report alleging that DelCarlo refused services to an inmate with a self-declared psychological emergency. ECF No. 37-42. (Public-WBA)

- The two March 30, 2018 reports alleging that Nurse Long and Nurse McDaniel violated FDC inmate-relations rules. ECF No. 37-51; ECF No. 37-56. (Public-WBA)

- The April 10, 2018 email alleging that Johnson was retaliating against Harrell. ECF No. 37-67. (Private-WBA)

The adverse-action element is conceded. The remaining issue, then, is whether Harrell has provided evidence from which a jury could connect those disclosures to some adverse action. MHM argues that she has not.

## A. Direct Evidence

First, I reject Harrell's contention that she has cited direct evidence of retaliatory intent. "Direct evidence is evidence, that, if believed, proves the existence of a fact without inference or presumption." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (cleaned up); *accord Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999) ("An example of direct evidence would be a management memorandum saying, 'Fire Plaintiff—he is too old.'" (cleaned up)). Harrell says the following constitutes direct evidence:

- After Harrell reported an improper inmate relationship, another employee wrote that "[t]hese are really not legitimate concerns that I can see. But I do think there is an issue with the employee writing these things." ECF No. 37-57.

- While Johnson was reviewing security videos to investigate Harrell's complaints, Johnson stated to another employee. "I am going to get that bi*** . . . one way or another!" ECF No. 37-91 ¶ 15.

- After Johnson forwarded Harrell's narcotics-log complaint to other employees, Cook responded saying: "[a]s this day moves on, I continue to be amazed by what someone [sic] when they are held to the standards of anyone else." ECF No. 37-47.

- Johnson falsely reported to HR that Harrell submitted a verbal resignation when (according to Harrell) she had only asked whether company policy required employees to give two-weeks' notice. ECF No. 31-21 at 36; *see also* Harrell Decl. ¶ 37.

- While discussing Harrell's disclosures, Johnson and Brus exchanged emails referring to Harrell's being "on a manhunt." ECF No. 37-27 at 2, 4.

None of these facts—or any other evidence Harrell cites—constitutes direct evidence. Each requires some inference to conclude there was retaliatory intent.

## B. Circumstantial Evidence

What is left is circumstantial evidence. And therefore, the *McDonnell Douglas* framework applies. *See Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419-20 (Fla. 4th DCA 2015) (Public-WBA); *Chaudhry*, 2020 WL 6370333, at *3 (Private-WBA). Under that framework, Harrell must first show some causal connection—enough to establish a prima facie case—at which point the burden would shift to MHM to show a legitimate, nonretaliatory reason. If MHM did, the burden would return to Harrell to show pretext. *See generally Lewis v. City of Union City*, 918 F.3d 1213, 1220-21 & n.6 (11th Cir. 2019); *Rustowicz*, 174 So. 3d at 427.

Harrell has shown a prima facie case. For causation, the temporal proximity of the complaints to Harrell's termination alone is sufficient. *See Rustowicz*, 174 So. 3d at 427 (holding that 10-month difference between protected disclosure and adverse action sufficient to show prima facie case under WBA). And MHM has articulated legitimate reasons for the termination. It has in fact advanced four: (1) Harrell's time and attendance issues, (2) her sending confidential work emails to her personal account, (3) her violating the inmate-relations policy, and (4) her failing to handle narcotics counts properly. Thus, the burden returns to Harrell to show that

these reasons—all of them—were pretextual.[10] *See Crawford v. City of Fairburn*, 482 F.3d 1305, 1309 (11th Cir. 2007). I find that she has.

An employee must do more than show that an employer's proffered reasons for taking an adverse action were false; "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (cleaned up). And it is not enough for Harrell to show generally that she was retaliated against because she was generally a complainer; she must show a causal connection between one of her protected disclosures and some adverse action.

There are, recall, four protected disclosures potentially at issue. As to the January 2018 complaint against DelCarlo, Harrell has made no attempt to meet her burden and show this was a but-for cause of her termination or other adverse action. So that disclosure cannot support any claim. As to the other three, though, I conclude there is a triable issue. She has shown enough.

---

[10] MHM argues only that Harrell cannot show that the reasons it has proffered for Harrell's termination were pretextual. It does not argue the same-decision affirmative defense here. *See, e.g.*, Fla. Stat. § 112.3187(10).

*1.*

According to MHM, Harrell was first disciplined on December 13, 2017, when she received counseling for time and attendance issues. ECF No. 31-17.[11] This occurred just two days before Harrell submitted what she contends was her first protected disclosure to Brus. ECF No. 39 at 6 ¶ 2.[12] MHM cited Harrell's continued time and attendance issues in her termination notice, ECF No. 31-22, and says Harrell was late for thirty shifts in the ninety days before her termination. Excessive tardiness is a legitimate issue, of course, but Harrell has shown evidence from which a jury could find that this justification for her termination was pretextual.

First, there is a dispute as to when Harrell was supposed to arrive. When she received the counseling, her arrival time was 8:00 a.m. Harrell's time sheets show that she often arrived after 8:00, but Harrell says she was only required to arrive "*around* 8:00AM" after taking her children to daycare. Harrell Decl. ¶ 7. Harrell also says that before her promotion to ADA nursing coordinator, she did not have a set schedule. *Id.* ¶ 5. Second, she says that the timesheets don't reflect informal agreements with her supervisors about her arrival times. *Id.* ¶ 6; ECF No. 37-1 at 70-

---

[11] Harrell acknowledges that she had a conversation with her supervisor about tardiness but denies that this constituted counseling. *See* ECF No. 37-1 at 69.

[12] Harrell contends that she tried to call Brus in the days before receiving the verbal warning, but Brus did not answer. ECF No. 39 at 6-7 ¶ 3.

71.[13] The "verbal counseling" was issued during the short time Blocker was her supervisor; Harrell says her other supervisors had no issues with her arrival time. ECF No. 37-1 at 71-73, 83. Moreover, Brus (in MHM HR) acknowledged in her deposition that the attendance policy was not consistently enforced. ECF No. 37-4 at 186-90. On top of that, Harrell's April 9, 2018 "final warning" made no mention of continued attendance issues. ECF No. 31-19. Finally, Harrell argues that even if she was occasionally late, she should have received progressive discipline if MHM felt her attendance issues were problematic. Instead, Harrell was promoted in March 2018 (a little more than a month before she was fired) despite her attendance record. ECF No. 31-13.

*2.*

Shortly after Harrell complained about other nurses' inmate relations, she received her "final warning" for violating the same policy. ECF No. 31-19. According to the related counseling report, Harrell allowed an inmate orderly into her office in violation of FDC policy.[14] ECF No. 31-19.

---

[13] Some of the days MHM says Harrell was late, she was within the grace period MHM policy allowed. Blocker acknowledged in her deposition that "[t]here is still sometimes some confusion" regarding the application of the clock-in policy. ECF No. 37- 3 at 35-36.

[14] Johnson says she noticed this when reviewing security cameras during her investigation into Harrell's complaints about Long and McDaniel. But Harrell's earlier incident reports mentioned that an inmate had entered her office to empty trash. ECF No. 37-63.

Harrell denies that allowing the inmate to enter her office violated any policy—and that the inmate had "positive control of the door." Harrell Decl. ¶¶ 28-30; ECF No. 37-1 at 98 ("[H]e did not have positive control of my door."). *But see id.* at 94 ("[Y]es, he had control of the door."). She also asserts that the "final warning" was itself an act of retaliation. Harrell Decl. ¶ 30. According to other employees, inmate orderlies frequently enter offices to empty trash, and this was never considered a problem. ECF No. 37-91 ¶¶ 12-13; ECF No. 37-92 at 2. Harrell has produced MHM documents showing that inmate orderlies work unsupervised, ECF No. 37-95, and that six days after the incident with Harrell, Johnson sent an email to nursing staff saying that the policy would be to place trash in the hallways for orderlies to collect, ECF No. 37-26.

As further evidence that the warning was retaliatory and pretext for her later termination, Harrell points to an email Douin (MHM's Regional Director, *see* ECF No. 31-2 at 8) sent Brus and Johnson, ECF No. 37-57, and Frank Zurica's affidavit, ECF No. 37-91 (Zurica was the maintenance superintendent). After Harrell reported other nurses' inmate relations, Johnson emailed Brus, Douin, and Barton to relay Harrell's concerns. ECF No. 37-46. As noted above, Douin responded saying, "[t]hese are not really legitimate concerns that I can see. But I do think there is an issue with the employee writing these things." ECF No. 37-57. Additionally, as noted above, when Zurica reviewed security footage with Johnson as part of the

25

investigation into Harrell's complaints, Johnson was particularly interested in footage from a camera showing Harrell's office, and she said of Harrell, "I am going to get that bi*** . . . one way or another!" ECF No. 37-91 ¶¶ 5-7, 15. (Zurica was familiar with FDC rules and regulations but said he did not see anything on the security footage that would have been a violation. *Id.* ¶ 12-14.)

Next, the April 9 "final warning" said MHM would "continue to the [sic] monitor the situation on a regular basis" and listed dates for following up with Harrell that extended into July—months after her termination. ECF No. 31-19. Based on all of this, I conclude Harrell has shown a triable issue as to whether the "final warning" was retaliation and as to whether it was a pretextual reason for her termination.

*3.*

MHM also says that Harrell's use of her personal email account for work purposes violated its policies and was a reason for her termination. MHM identified 25 emails Harrell sent to her personal email and confronted her with the list when it issued the "final warning." ECF No. 37-14. The emails included drafts of Harrell's incident reports, mileage reimbursements, and her husband's workers' compensation forms. *Id.*; ECF No. 37-10. Her termination notice said the emails contained incident reports that included "the names of medical staff and inmate names and DC numbers," ECF No. 31-22, but MHM has not produced any emails

with this type of information, and Harrell says she never sent HIPAA-protected information, Harrell Decl. ¶ 32. Harrell also says that MHM policy allowed her to use personal email account in this way, *id.* ¶ 31; *see also* ECF No. 37-34 at 16 (MHM Employee Handbook), and points to the fact that she used her personal email to correspond with her supervisors, Harrell Decl. ¶ 31, and that she used it to submit her sexual harassment complaint against Cook, *see* ECF No. 37-40. Moreover, Brus testified that she did not know of a policy that Harrell violated in sending these emails to her personal account, ECF No. 37-4 at 33-36, and the policies MHM cites, *see* FDC Procedures 102.008 and 206.007, are not in the record. MHM argues that even if this was not a policy violation, general confidentiality concerns warranted termination. But Harrell argues that MHM's confidentiality concerns are pretextual because when she filed a public records request for her incident reports, she received an unredacted copy. *See* ECF Nos. 37-73; 37-74; 37-75. Finally, MHM argues that Douin testified that "it's very *possible*" that Harrell "*could*" have been terminated for the email violation and late arrivals alone, but she stopped short of saying that Harrell *would* have been terminated for these reasons standing alone. ECF No. 31-2 at 67 (emphasis added).

A plaintiff is not required to show that a defendant's proffered non-retaliatory reasons were false to establish that they were pretextual. *Damon*, 196 F.3d at 1363 & n.3. The emails dated back to July 2017, ECF No. 37-14, but Harrell was only

27

confronted with them when she was issued what she alleges was a retaliatory "final warning." A reasonable jury could find that this proffered justification for Harrell's termination was pretext for unlawful retaliation.

*4.*

Five days after receiving the "final warning," MHM alleged that Harrell failed to conduct a narcotics count or account for the narcotics key when she was assigned to the pillroom—something for which Harrell had reported others. ECF No. 37-46; ECF No. 31-22. On the day in question (April 14, 2018), Harrell was scheduled to arrive to work at 10:00 a.m. ECF No. 37-17. The incoming and outgoing nurses are required to complete the narcotics log together. ECF No. 37-2 at 23-24. Yet the log for that date shows that two other nurses conducted the count together at 7:00 a.m.— hours before Harrell's arrival. ECF No. 37-12. Harrell denies that she ever possessed the narcotics keys, Harrell Decl. ¶ 45, and her name does not appear on the Narcotic Key Exchange Log, ECF No. 37-13. MHM's director of nursing testified that if a nurse never possessed the narcotics key, she was not required to sign the log. ECF No. 37-2 at 35. Although Harrell's termination paperwork said the assignment sheet instructed the nurse assigned to the pillroom to conduct a narcotics count, ECF No. 37-9, the assignment sheet does not appear to include any such instruction, ECF No. 37-11.

I find that Harrell has shown a triable issue as to whether the alleged narcotics violation was the real reason for her termination.

## V. MITIGATION OF DAMAGES

Finally, MHM argues it is entitled to summary judgment on its mitigation-of-damages affirmative defense, saying this negates Harrell's back-pay claim. ECF No. 32 at 34; *see also* ECF No. 11 at 14. MHM argues that after Harrell was released from Graceville, she made no attempt to seek work. ECF No. 32 at 11 (citing ECF No. 31-3 at 23-25, 29). Harrell offers little in response, other than to say that "this assertion [is] false and offensive" and she should have been reinstated years ago. ECF No. 39 at 38-39. She also says that her inability to find work was part of an elaborate plot—that her MHM supervisors "concocted and implemented an unlawful scheme to take any [and] all actions they could to destroy Harrell's reputation both in the geographical area where she lived and within [FDC], cause her to be terminated from her subsequent job at Graceville, destroy her career, destroy her marriage, destroy her relationships with her family, and cause her as much damage as possible." *Id.* at 22.

Florida courts analyze whistleblower retaliation claims the same way federal courts analyze Title VII retaliation claims and hold that a plaintiff has a duty to mitigate damages by making reasonable efforts to find employment following an unlawful termination. *Aery*, 118 So. 3d at 912, 915. MHM has the burden of proving

29

this affirmative defense. *See id.* at 915. MHM points to the fact that Harrell testified that she did not inquire as to the reason she could not pass a background check and never applied to work for another prison healthcare provider. ECF No. 32 at 11 (citing ECF No. 31-3 at 24-25, 29). But Harrell stated in her declaration that she applied "for any and all nursing jobs that [she] could find," and that because of issues with her background check she was unable to get a job with state-affiliated employers. Harrell Decl. ¶ 55. She also stated that she did find other work and had been employed "[f]rom June of 2018 through the present." *Id.* ¶ 56.

In short, MHM has not shown that it is entitled to summary judgment on its failure to mitigate defense. *Cf., e.g.*, *Aery*, 118 So. 3d at 915-16 (summary judgment improper on mitigation defense where terminated employee briefly found alternative employment and then sought disability benefits); *Damon*, 196 F.3d at 1363 (an employer's proffered reason "is arguably pretextual when a plaintiff submits evidence (1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated").

## VI. CONCLUSION

MHM's motion for summary judgment (ECF No. 32) is GRANTED as to the FCRA retaliation claim. It is GRANTED in part as to as to the Public and Private Whistle-Blowers' Act claims.

30

On her Public-WBA claim, Harrell may not recover based on purported disclosures other than her March 30, 2018 "incident reports" alleging that Nurse Long and Nurse McDaniel were violating FDC regulations on inmate relations. ECF No. 37-51; ECF No. 37-56. On her Private-WBA claim, Harrell may not recover based on any purported disclosure other than her April 10, 2018 email to Brus alleging that Johnson was retaliating against her. ECF No. 37-67.

Additionally, the motion is DENIED to the extent MHM argues it is entitled to summary judgment on its failure to mitigate defense.

SO ORDERED on December 16, 2020.

s/ *Allen Winsor*
United States District Judge